# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTY WILSON** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:11cv447-HSO-JMR** |
| | § | |
| **NEW PALACE CASINO,** | § | |
| **L.L.C., *et al.*** | § | **DEFENDANTS** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'</u>
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

THIS MATTER COMES BEFORE THE COURT on a Motion for Partial Summary Judgment [46] filed on November 19, 2012, by Defendants New Palace Casino, L.L.C., Wahoo's Poolside Bar & Grill, and Keith Crosby. Plaintiff Marty Wilson has filed a Response [50] in opposition to the Motion, and Defendants have filed a Reply [52]. After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that Defendants' Motion for Partial Summary Judgment should be granted.

## I. <u>BACKGROUND</u>

This action stems from Defendants' purported use of the depiction of a wahoo fish extracted from a painting by Plaintiff Marty Wilson which is entitled Blue Water Blitz. The parties agree that Defendants or a Defendant purchased the original painting, but there is a dispute of fact regarding the terms of a purported licensing agreement or agreements which ostensibly permitted Defendants to utilize the artwork for commercial purposes. Plaintiff maintains that his wahoo fish, taken from the Blue Water Blitz painting, was used without his authorization in

-1-

promotional items at Wahoo's Poolside Bar & Grill ("Wahoo's") at the Palace Casino in Biloxi, Mississippi, including on menus and t-shirts.

Plaintiff filed his Complaint [1] in the United States District Court for the Eastern District of Louisiana on August 23, 2011, naming New Palace Casino, L.L.C. ("New Palace"), Wahoo's, and Keith Crosby (collectively, "Defendants") as Defendants. He asserts claims for copyright infringement, unjust enrichment, misappropriation, and violation of the Lanham Act, in particular 15 U.S.C. § 1125(a). Compl. [1], at pp. 3–7. Plaintiff seeks damages, including an alternative request for statutory damages for alleged copyright infringement, and attorney's fees. *Id.* at p. 7. Defendants now request entry of partial summary judgment on Plaintiff's claims (1) to the extent he alleges violations of the rights of attribution or integrity under the Copyright Act; (2) for statutory damages and attorney's fees under the Copyright Act; (3) for violation of the Lanham Act; and (4) for unjust enrichment or misappropriation under state law. Defs.' Mot. [46], at pp. 2–3.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

B.     Defendants' Motion for Partial Summary Judgment

      1.     Attribution or Integrity Claims under the Copyright Act

Defendants argue that, to the extent Plaintiff asserts attribution or integrity claims under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A, such claims should be dismissed.  Defs.' Mem. in Supp. of Their Mot. for Summ. J. [47], at p. 4.  They maintain that the undisputed facts establish that the wahoo fish contained within the Blue Water Blitz painting, and the original painting itself, have each been reproduced by Plaintiff in such numbers that neither qualifies as a "work of visual art," as that term is defined in 17 U.S.C. § 101.  *Id.* at pp. 4–5.  Plaintiff therefore cannot assert the rights of attribution and integrity afforded authors of "works of visual art" under § 106A, *id.*, since "Congress sought only to protect a very narrow scope of works," Defs.' Reply [52], at p. 3.

Plaintiff counters that the foundation of his claim under the Copyright Act is "an original watercolor painting authored by [him], existing as a single copy . . . ." Pl.'s Resp. [50], at pp. 4–5.  He argues that the "copies" of Blue Water Blitz upon which Defendants base their argument actually constituted "derivative works."  *Id.*

at p. 5. Under this reasoning, Blue Water Blitz would still qualify as a "work of visual art" under § 106A. *Id.*

Section 603 of VARA, 17 U.S.C. § 106A, affords the author of a work of visual art the rights of attribution and integrity. "VARA amended the Copyright Act, importing a limited version of the civil-law concept of the 'moral rights of the artist' into our intellectual-property law." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 291 (7th Cir. 2011). VARA's objective is to protect

> both the reputations of certain visual artists and the works of art they create. It provides these artists with the rights of "attribution" and "integrity." The former ensures that artists are correctly identified with the works of art they create, and that they are not identified with works created by others. The latter allows artists to protect their works against modifications and destructions that are prejudicial to their honor or reputations.
>
> These rights are analogous to those protected by Article 6bis of the Berne Convention, which are commonly known as "moral rights."

H.R. Rep. No. 101-514, 1990 WL 258818 (1990).

Section 106A reads, in relevant part, as follows:

(a)     Rights of attribution and integrity. Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art--
   (1)     shall have the right--
      (A)     to claim authorship of that work, and
      (B)     to prevent the use of his or her name as the author of any work of visual art which he or she did not create;
   (2)     shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and
   (3)     subject to the limitations set forth in section 113(d), shall have the right--
      (A)     to prevent any intentional distortion, mutilation, or

-4-

other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

(B)    to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

(b)    Scope and exercise of rights. Only the author of a work of visual art has the rights conferred by subsection (a) in that work, whether or not the author is the copyright owner. . . .

(c)    Exceptions.

\* \* \*

(3)    The rights described in paragraphs (1) and (2) of subsection (a) shall not apply to any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item described in subparagraph (A) or (B) of the definition of "work of visual art" in section 101, and any such reproduction, depiction, portrayal, or other use of a work is not a destruction, distortion, mutilation, or other modification described in paragraph (3) of subsection (a) . . . .

17 U.S.C. § 106A.

    *a.*    *Plaintiff Does Not Assert Viable VARA Claims as to the Original Blue Water Blitz*

The parties dispute whether either the Blue Water Blitz painting or the wahoo fish extracted from it constitutes a "work of visual art" as that term is used in § 106A. A "work of visual art" is defined as

(1)    a painting, drawing, print, or sculpture, existing in a single copy, [or] in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author . . . .

A work of visual art does not include--

(A)    (i)    any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;

(ii)    any merchandising item or advertising, promotional, descriptive, covering, or packaging material or

container;

(iii)    any portion or part of any item described in clause (i) or (ii);

(B)    any work made for hire; or

(C)    any work not subject to copyright protection under this title.

17 U.S.C. § 101.

Defendants argue that Blue Water Blitz is not "a painting, drawing, print, or sculpture, existing in a single copy, [or] in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author . . .," 17 U.S.C. § 106A. They maintain that both the Blue Water Blitz painting and the wahoo extracted from it have been copied more than 200 times, such that neither qualifies as a "work of visual art" under § 106A. Plaintiff responds that the works to which Defendants refer are not "copies," but instead comprise "derivative work[s]," under the Copyright Act.

The Court need not resolve whether the original Blue Water Blitz itself constitutes a "work of visual art" under VARA. As the United States Supreme Court has explained, the "express right of attribution is carefully limited and focused: It attaches only to specified 'work[s] of visual art' . . . ." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34–35 (2003) (quoting 17 U.S.C. § 101). Plaintiff does not allege that Defendants have incorrectly attributed the authorship of the original Blue Water Blitz, or that they have modified or distorted the original painting in any way. Thus, Plaintiff has not asserted a viable attribution or integrity claim against Defendants with respect to the original Blue Water Blitz.[1]

---

[1]One treatise has explained that the distinction in VARA between an artist's original painting and limited edition supervised copies and all other representations of the same

      b.       *The Actual Images Defendants Allegedly Copied Did Not*
                      *Constitute "Work[s] of Visual Art"*

Assuming without deciding that the original Blue Water Blitz qualifies as a "work of visual art" under VARA, the Court is not persuaded that any rights of attribution or integrity attached to the version of the wahoo that Defendants allegedly actually copied. Plaintiff explained how the wahoo came to be "standing alone by itself" when Defendants allegedly used it:

> I have used that wahoo on other commercial applications, like the Department of Marine Resources, who commissioned me to do a poster for species identification for the, you know, Mississippi Gulf waters, and that wahoo is used on that poster by itself.
>
>                         \*   \*   \*
>
> And it's also on my Web site. *So really, me personally, you know, don't believe that he pulled it out of that original that was hanging on his wall under glass. He pulled it from somewhere else and decided to use it with a full graphics department at his fingertips at his casino.*

Dep. of Martin Eric Wilson, at pp. 83–84, attached as Ex. "A" to Defs.' Reply [52] (emphasis added).

---

image

> imparts an almost antipodal contrast between copyright and artists' rights. The former, being concerned with conceptual types, attaches widely and can thus be characterized as volatile--an artist's copyright can be violated in a city with which she has no contact through such evanescent means as a radio broadcast, performance of a play, or display on a cathode ray tube. By contrast, artists' rights, being rooted to concrete objects, are forever fixed to limited points of attachment, and thus can be characterized as tactile--an artist's rights can be violated in a city only when her protected artwork is physically transported there, and the violation occurs always in propinquity to the protected object.
>                         \*   \*   \*
> At the abstract (or perhaps fustian) level, traditional copyright law protects art; by contrast, the Visual Artists Rights Act protects artifacts.

3-8D MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8D.06[a][2] (footnotes and citations omitted).

Plaintiff then testified as follows:

> Q.  So is it your testimony that this wahoo is not original with Blue Water Blitz?
>
> A.  Well, I'm not saying that.  It may be.  It may be.
>
> Q.  You're just not sure.
>
> A.  I've used it by itself.  I've used it by itself, and I think that's how it ended up getting by itself, if you see what I'm saying.
>
> Q.  That it came from Blue Water Blitz.
>
> A.  I don't think Keith Crosby Photoshopped the wahoo out of Blue Water Blitz.
>
> Q.  Do you know where he would have gotten it?
>
> A.  Well, it's on the Internet and it was printed on those posters and it was printed on those tiles.  That's what I'm saying.  I've used it, but because I've used it doesn't give everybody permission to use it.

*Id.* at pp. 120–121.

According to Plaintiff, when he authorized Defendants to use Blue Water Blitz on t-shirts for the Palace Casino Marina for one summer in around 2001 or 2002, he might have provided the casino or the casino's screen printer an electronic version of Blue Water Blitz.  Dep. of Martin Eric Wilson, at pp. 52–53, 55–56, 66, attached as Ex. "B" to Defs.' Mot. for Partial Summ. J. [46]; Dep. of Martin Eric Wilson, at p. 121, attached as Ex. "A" to Defs.' Reply [52].

VARA is more limited in scope than the Copyright Act.  Its "definition of 'work of visual art' is limited to a narrow subset of this broader universe of 'pictorial, graphic, and sculptural works' that are otherwise eligible for copyright . . . ."  *Kelley*, 635 F.3d at 299; *see* H.R. Rep. No. 101-514, 1990 WL 258818 (1990) ("The definition of a work of visual art is a critical underpinning of the limited scope of the bill.").  The definition of a "work of visual art" excludes a number of works which might otherwise be copyrightable, including "any poster, map, globe, chart, technical

drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication." 17 U.S.C. § 101; *see also Kleinman v. City of San Marcos*, 597 F.3d 323, 329 (5th Cir. 2010); *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 48 (1st Cir. 2010). Thus, "only a select few categories of art get the extra protection provided by the moral-rights concept." *Kelley*, 635 F.3d at 299 (citation omitted).

Plaintiff has identified in his testimony the sources from which he apparently believes Defendants could have acquired the wahoo that appeared in Wahoo's Bar & Grill. However, none of these potential "source images" would constitute a "work of visual art" as that term is used in VARA. Plaintiff's attribution and integrity rights under VARA could not be violated by Defendants' use of such copied images of the extracted wahoo, since "a 'work of visual art' can consist only of the artist's original 'painting' and limited edition supervised copies, all other representations of the same image being definitionally ineligible." 3-8D MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8D.06[a][2].

The possible "source images" Plaintiff has identified would be ineligible for protection under VARA because they are excluded from its definition of "work of visual art." Of the possible sources Plaintiff has identified from which Defendants could have copied the wahoo, such as a poster of the wahoo, the internet, printed tiles, and a digitized version of Blue Water Blitz, none would qualify as a "work of visual art" under VARA's definition. *See* 17 U.S.C. § 101 (excluding posters, applied

art, electronic publication, and similar publications from definition of "work of visual art"); *see also* 3-8D MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8D.06[a][2]; *Neeley v. NameMedia, Inc.*, No. 5:09cv5151-JLH (W.D. Ark. June 7, 2011) (interpreting § 106A(c)(3) to mean that the right of integrity does not apply to copies of a plaintiff's photographs of his artwork on the internet), *aff'd*, 463 F. App'x 604, 605 (8th Cir. 2012) ("dismissal of [plaintiff's] 17 U.S.C. § 106A claims was proper for the reasons stated by the district court in its June 7, 2011 order").  For this reason, Plaintiff's VARA claims cannot withstand judgment as a matter of law.

c.    *Defendants' Purported Use of the Artwork Fell Outside the Scope of VARA*

Even if the artwork Defendants allegedly copied constituted a "work of visual art" under VARA, Plaintiff's claims for attribution and integrity must nevertheless be dismissed.  Plaintiff alleges that the wahoo from Blue Water Blitz appears on the signage, marketing, and advertisements at Wahoo's, and on manufactured products sold by Defendants, Compl. [1], at ¶ 15, and that Defendants used it "in connection with their commercial sales and merchantable goods," *id*. at ¶ 24.  Plaintiff testified that Defendants displayed the wahoo depicted in Blue Water Blitz at Wahoo's pool bar as its logo on plastic drinking cups, menus, signage, t-shirts worn by employees and for sale, drink huggers, and advertisements.  Dep. of Martin Eric Wilson, at pp. 68–69, attached as Ex. "B" to Defs.' Mot. for Partial Summ. J. [46].

Section 106A(c)(3) provides that the rights of attribution and integrity "shall not apply to any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item described in subparagraph (A) or (B) of the

definition of 'work of visual art' in section 101 . . . ." 17 U.S.C. § 106A(c)(3).

Subparagraph (A) of § 101 includes "any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container . . ." as items excluded from VARA's reach.  17 U.S.C. § 101.

Each of Defendants' alleged uses of the wahoo involved merchandising or qualified as advertising or promotional materials as described in subparagraph (A) of § 101's definition of "work of visual art."  The plain language of § 106A(c)(3) would therefore seem to exclude these uses from VARA.  *See, e.g., Martin v. Walt Disney Internet Group*, No. 3:09CV1601-MMA-POR, 2010 WL 2634695, *5 (S.D. Cal. June 30, 2010) ("the plain language of Section 106A(c)(3) excludes Defendants' actions from VARA protection because Defendants reproduced and published Plaintiff's photograph in a magazine"); *Berrios Nogueras v. Home Depot*, 330 F. Supp. 2d 48, 51 (D.P.R. 2004) ("it is clear that VARA does not afford a right of action to plaintiff for the unauthorized reproduction of his work upon the 'posters' or 'shoppers' *i.e.* 'advertising or promotional material' that were printed or published by defendants in their stores").

In sum, to the extent Plaintiff asserts attribution or integrity claims under VARA, such claims cannot withstand judgment as a matter of law.  The Court will grant Defendants' Motion to the extent it requests summary judgment on Plaintiff's claims for attribution and integrity under VARA.

2.  Statutory Damages and Attorney's Fees under the Copyright Act

The Complaint seeks "[a]n award to plaintiff of the profits, gains and advantages derived by the defendants as a result of willful copyright infringement in addition to compensation for the damages sustained and/or an award of the maximum statutory damages of $150,000.00 per infringement if so elected by plaintiff," and attorney's fees. Compl. [1], at p. 7. Defendants assert that Plaintiff cannot recover statutory damages or attorney's fees for their alleged copyright infringement. Defs.' Mem. in Supp. of Their Mot. for Summ. J. [47], at pp. 5–6. They maintain that, because any alleged infringement began prior to the date of the work's copyright registration, an award of statutory damages or attorney's fees is not available under 17 U.S.C. § 412. *Id.* Plaintiff responds that registration is not a prerequisite since this is an action brought for a violation of the rights of the author of a work of visual art. Pl.'s Resp. [50], at pp. 5–6.

The record reveals that Plaintiff created Blue Water Blitz sometime before or during 2002. Certificate of Registration, at p. 1, attached as Ex. "A" to Defs.' Mot. for Partial Summ. J. [46] (listing year of completion as 2002); Dep. of Martin Eric Wilson, at p. 119, attached as Ex. "A" to Defs.' Reply [52] ("we've got a copyright paper here saying 2002, but I think I painted that painting way before that and used it"). The effective date of registration with the Register of Copyrights, however, was October 7, 2010. Certificate of Registration, at p. 1, attached as Ex. "A" to Defs.' Mot. for Partial Summ. J. [46].

Plaintiff testified that he was approached by Defendants about using Blue Water Blitz on t-shirts for the Palace Casino Marina around 2001 or 2002. Dep. of Martin Eric Wilson, at pp. 52–53, attached as Ex. "B" to Defs.' Mot. for Partial Summ. J. [46]. He agreed to permit the use of the shirts for one summer. *Id.* at p. 66. Plaintiff claims that he authorized the use of Blue Water Blitz, without lettering, and the words "Palace Casino Marina" on the shirts. *Id.* at pp. 55–56, 66. According to Plaintiff, at the end of that summer, Defendant Crosby purchased the original Blue Water Blitz, "with no copyrights attached." *Id.* at p. 56. Plaintiff first noticed the alleged copyright infringement the year Wahoo's pool bar opened, which he believed was prior to Hurricane Katrina, in either 2003 or 2004. *Id.*, at pp. 68–70.

17 U.S.C. § 412 provides that

> [i]n any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
>
> (1)  any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2)  any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

The Fifth Circuit has held that the text of § 412 is ambiguous with respect to whether a plaintiff can recover statutory damages and attorney's fees when a

defendant infringes a copyrighted work both prior to and after its registration. *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992). The Fifth Circuit ultimately concluded that "that a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the same defendant commenced an infringement of the same work prior to registration." *Id.* at 144. Because there is no dispute that Defendants' alleged infringement of Blue Water Blitz commenced in either 2003 or 2004, prior to its copyright registration in 2010, statutory damages and attorney's fees are not available to Plaintiff. *See id.*; *see also* 17 U.S.C. § 412.

Plaintiff does not seem to dispute that the date of registration would normally preclude an award of statutory damages and attorney's fees, as he does not address this question in his Response. Rather, Plaintiff grounds his claim for statutory damages and attorney's fees on his VARA theory of recovery under § 106A. The Court has already addressed this argument. Because the work that Defendants allegedly copied did not qualify as a statutory "work of visual art," so as to fall within the ambit of VARA protection, the VARA exception in 17 U.S.C. § 412 upon which Plaintiff relies is inapplicable. Defendants have demonstrated that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law on Plaintiff's claims for statutory damages and attorney's fees under the Copyright Act. The Court will grant Defendants' Motion for Partial Summary Judgment to the extent it seeks dismissal of these claims.

3.  <u>Violation of the Lanham Act</u>

Plaintiff alleges that Defendants' unauthorized use of Blue Water Blitz violated the Lanham Act, in particular 15 U.S.C. § 1125(a).  Compl. [1], at p. 6.  Defendants argue that Plaintiff cannot support a Lanham Act claim because he cannot establish that his artwork constituted a legally protectable trademark.  Defs.' Mot. for Partial Summ. J. [47], at pp. 6–8.  In response, Plaintiff posits that it does not constitute "double recovery" to award damages for both copyright and trademark infringement.  Pl.'s Resp. [50], at p. 6.  Defendants point out that this is not the basis of their argument.  Reply [52], at p. 6.

Plaintiff seems to argue that Defendants' use of his artwork in their marketing and advertising campaign, and in producing and selling merchandise, violates section 43(a) of the Lanham Act, specifically 15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B).  Pl.'s Resp. [50], at pp. 6–7.  He contends that Defendants did so without properly compensating him, and that their unauthorized use of his artwork is likely to cause confusion among consumers as to his affiliation with, and endorsement of, Defendants' casino, bar, and grill.  *Id.* at p. 7.

15 U.S.C. § 1125(a)(1) reads as follows:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To support a claim under the Lanham Act, a plaintiff must show two things: (1) ownership in a legally protectable mark; and (2) infringement by demonstrating likelihood of confusion. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010) (citing *Bd. of Supervisors for La. State Univ. Agric. and Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)). The Fifth Circuit has noted that section 45 of the Lanham Act defines "trademark" and "service mark" separately, but it has explained that

> the terms essentially include:
> any word, name, symbol, or device, or any combination thereof ... used by a person . . . to identify and distinguish his or her goods [or services] . . . from those manufactured or sold [or provided] by others and to indicate the source of the goods [or services], even if that source is unknown.

*Amazing Spaces*, 608 F.3d at 236 (quoting 15 U.S.C. § 1127).

Plaintiff has not identified a trademark or service mark that has been infringed. Rather, he appears to take the position that Defendants violated the Lanham Act by using his artwork to create the false perception of an endorsement by him as a "well known professional maritime visual artist" of Defendants' bar and grill. Pl.'s Resp. [50], at p. 7. Plaintiff relies on two cases to support this argument. *Id.* (citing *Waits v. Frito-Lays*, 978 F.2d 1093 (9th Cir. 1992); *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988)).

-16-

*Midler* is clearly distinguishable because that case did not involve a trademark claim under the Lanham Act. In *Midler*, an advertisement featured a "sound alike" of singer Bette Midler performing one of her popular songs. *Midler*, 849 F.2d at 461. At issue was the protection of Midler's distinctive voice, which was "widely known and . . . deliberately imitated." *Id.* at 463. The Ninth Circuit considered California common law rights to a person's name, voice, signature, photograph, and likeness, and determined that the "sellers have appropriated what is not theirs and have committed a tort in California." *Id.* California tort law is not applicable to Plaintiff's Lanham Act claim in this case.

*Waits* was another voice misappropriation dispute involving singer Tom Waits, a celebrity with a widely known, distinctive voice. In *Waits*, the plaintiff raised a false endorsement claim under section 43(a) of the Lanham Act, as well as a voice misappropriation claim under California law. *Waits*, 978 F.2d at 1098. The Ninth Circuit referred to the claim for voice misappropriation as the "*Midler* tort," which it explained was a "species of violation of the 'right of publicity,' the right of a person whose identity has commercial value—most often a celebrity—to control the commercial use of that identity." *Id.*

As for Waits' Lanham Act claim, the Ninth Circuit concluded that it was "premised on the theory that by using an imitation of his distinctive voice in an admitted parody of a Tom Waits song, the defendants misrepresented his association with and endorsement of [the product]." *Id.* at 1106. In reviewing this claim, the Court was presented with a case of first impression as to whether a false

endorsement claim was properly cognizable under section 43(a) of the Lanham Act. *Id.* It "conclude[d] that false endorsement claims, including those premised on the unauthorized imitation of an entertainer's distinctive voice, are cognizable under section 43(a)." *Id.* at 1107.[2]

Assuming without deciding that such a celebrity false endorsement claim would be a recognized cause of action in the Fifth Circuit, there does not appear to be any dispute that neither Plaintiff's name nor his likeness was used in connection with the wahoo on Defendants' merchandise and advertising.[3] Plaintiff's theory is apparently that he, or his artwork, has achieved a level of recognition such that the wahoo extracted from Blue Water Blitz, when seen alone without his signature or name, is so distinctive and widely recognized as his artwork that consumers would likely mistakenly believe that he endorsed Defendants' establishments. However, Plaintiff has not presented any competent summary judgment evidence to

---

[2] The parties have not directed the Court to any Fifth Circuit precedent on point. In *Waits*, the Ninth Circuit seemed to recognize a celebrity's persona or identity as his or her own "mark" within the context of the Lanham Act. In determining whether there exists a likelihood of confusion in celebrity endorsement cases under the Lanham Act, the Ninth Circuit looked to factors including: (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended, which is equivalent to the strength of the "mark" or the strength of the celebrity's persona; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007–08 (9th Cir. 2001). The Third Circuit has also held that the language of section 43(a)(1) is broad enough to include other indicia of identity, such as a person's voice if the voice is a "distinctive mark." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 & 1018–20 (3rd Cir. 2008) (adopting a "slightly modified version" of the *Downing* factors for a false endorsement claim).

[3] The failure to attribute the wahoo painting to Plaintiff was the basis of his attribution claim under VARA, which the Court has dismissed.

-18-

demonstrate his identifiability with the wahoo alone, so as to establish the likelihood of confusion as to his endorsement of Defendants' establishments. *See Better Bus. Bureau of Metro. Houston, Inc. v. Med. Dirs., Inc.*, 681 F.2d 397, 400 (5th Cir. 1982) ("Central to the finding of false representations in advertising violative of section 43(a) of the Lanham Act . . . is a determination that the challenged activities create a 'likelihood of confusion' in the consuming public . . . as to, inter alia, the product's endorsement by the plaintiff") (citations omitted); *see also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2000) (holding that a "'likelihood of confusion' means that confusion is not just possible, but probable"). Plaintiff has not created a triable question of fact on the issue of whether he is as identifiable by the wahoo as by any other indicia of identity previously recognized as protectable, nor has he created a question of fact on whether Defendants' use of the wahoo created a likelihood of confusion among consumers as to his endorsement of their businesses. *See id.*; *Waits*, 978 F.2d at 1102.

Plaintiff is unable to support his claim for "trademark infringement" because he has not shown what protectable trademark or service mark has allegedly been infringed. *Amazing Spaces*, 608 F.3d at 235–36. Nor has he presented sufficient evidence to create a question of fact as to any false endorsement claim, assuming one is cognizable in this Circuit. Without evidence of a protectable mark, or of his identifiability with, or the distinctiveness of, the wahoo appearing by itself, Plaintiff's Lanham Act claims cannot withstand summary judgment.

4. <u>Unjust Enrichment or Misappropriation Claims under State Law</u>

Plaintiff advances claims for "unjust enrichment" and "misappropriation" under Mississippi law. Compl. [1], at pp. 5–6. Defendants maintain that these claims are preempted by federal copyright law, as Plaintiff "does nothing more than repackage its [sic] copyright claims in state, common-law terms." Defs.' Mem. in Supp. of Their Mot. for Summ. J. [47], at p. 10. Plaintiff responds that his state law claims arise under Mississippi Code § 75-24-5(1), Pl.'s Resp. [50], at p. 8, even though he did not reference this statute in his Complaint [1]. Defendants counter that Plaintiff has no private right of action under this statute. Defs.' Reply [52], at p. 8.

Mississippi Code § 75-24-5(1) provides that

> [u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited. Action may be brought under Section 75-24-5(1) only under the provisions of Section 75-24-9.

Miss. Code § 75-24-5(1). According to section 75-24-9,

> [w]henever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice. The action shall be brought in the chancery or county court of the county in which such person resides or has his principal place of business, or, with consent of the parties, may be brought in the chancery or county court of the county in which the State Capitol is located. The said courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of this chapter, and such injunctions shall be issued without bond.

Miss. Code § 75-24-9.

According to Mississippi Code § 75-24-15,

(1)    In addition to all other statutory and common law rights, remedies and defenses, *any person who purchases or leases goods or services primarily for personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5 may bring an action at law in the court having jurisdiction in the county in which the seller, lessor, manufacturer or producer resides, or has his principal place of business or, where the act or practice prohibited by Section 75-24-5 allegedly occurred, to recover such loss of money or damages for the loss of such property, or may assert, by way of setoff or counterclaim, the fact of such loss in a proceeding against him for the recovery of the purchase price or rental, or any portion thereof, of the goods or services.

(2)    *In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General.*

Miss. Code § 75-24-15(1)–(2) (emphasis added).

"[F]ailure to satisfy the prerequisite of an attempt at informal dispute resolution is fatal to a MCPA claim." *Lockey v. CMRE Fin. Servs., Inc.*, No. 1:11CV70-LG-RHW, 2011 WL 2971085, *3 (S.D. Miss. July 20, 2011) (citing *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 668 (S.D. Miss. 2007)).

Defendants point out that Plaintiff was not a purchaser or lessee of goods and has not attempted to resolve these claims through an informal dispute settlement program approved by the Attorney General. Defs.' Reply [52], at p. 8 (citing Miss. Code § 75-24-15). Plaintiff has not submitted any evidence to the contrary. He has not created a genuine dispute of material fact on this issue. Accordingly, Plaintiff may not bring a private cause of action against Defendants under the MCPA, and his

"unjust enrichment" and "misappropriation" claims, which he argues arise under Mississippi Code § 75-24-5(1), cannot survive summary judgment.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that summary judgment is appropriate on Plaintiff's claims for attribution and integrity and for statutory damages and attorney's fees under the Copyright Act; on Plaintiff's claims asserted under the Lanham Act; and on Plaintiff's "unjust enrichment" and "misappropriation" claims under state law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Partial Summary Judgment [46] filed by Defendants New Palace Casino, L.L.C., Wahoo's Poolside Bar & Grill, and Keith Crosby, on November 19, 2012, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Marty Wilson's claims for attribution and integrity and for statutory damages and attorney's fees under the Copyright Act; his claims asserted under the Lanham Act; and his "unjust enrichment" and "misappropriation" claims under state law, are **DISMISSED WITH PREJUDICE**.  Plaintiff's claim for copyright infringement will proceed to trial.

**SO ORDERED AND ADJUDGED**, this the 7th day of March, 2013.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE